**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff–Appellee,**

v.

**TOWNLEY ENGINEERING & MANU-FACTURING COMPANY, Defendant–Appellant.**

No. 87–2272.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 18, 1988.

Decided Sept. 19, 1988.

H. Edward Dean, Ocala, Florida, for defendant-appellant.

Lorraine C. Davis, Asst. Gen. Counsel, E.E.O.C., Washington, D.C., for plaintiff-appellee.

Before SNEED, HALL and NOONAN, Circuit Judges.

SNEED, Circuit Judge:

Townley Manufacturing Company appeals the district court's injunction halting its mandatory devotional services at its Eloy, Arizona plant. We substantially affirm the district court, but remand to permit the framing of its injunction more narrowly.

## I.

### FACTS AND PROCEEDINGS BELOW

Townley Manufacturing Company (Townley) is a closely held corporation organized under the laws of Florida. It manufactures mining equipment. It was founded in 1963 by J.O. (Jake) and Helen Townley, who still own about 94% of the stock. When they founded the company, Jake and

Helen Townley made a covenant with God that their business "would be a Christian, faith-operated business." The Townleys were and are "born again believers in the Lord Jesus Christ" who "are unable to separate God from any portion of their daily lives, including their activities at the Townley company." Appellant's Brief at 6. Townley opened its first plant in Florida; it has since opened other plants, including one in Eloy, Arizona in 1973.

Townley reflects its founders' covenant with God in several ways. For example, the company encloses a Gospel tract in every piece of outgoing mail; it prints Biblical verses on all company invoices, purchase orders, and other commercial documents; it gives financial support to various churches and missionaries; and, of particular importance to this case, it holds a devotional service once a week during work hours.

Townley's Florida plant has had weekly devotional services since its inception. They typically last from thirty to forty-five minutes, and may include prayer, thanksgiving to God, singing, testimony, and scripture reading, as well as discussion of business related matters. Townley required all employees to attend the weekly services; failure to attend was regarded as equivalent to not attending work.

In November 1979, Townley hired Louis Pelvas as a machinist in its Eloy plant. At that time there were no devotional services conducted at the Eloy plant. In December 1982, Townley gave its employees an employee handbook, which stated the company's policies and rules. Under the heading of company rules, the handbook stated: "All employees are required to attend the non-denominational devotional services each Tuesday. Employees are paid for their time while attending these services." Pelvas read the handbook and signed a statement agreeing, *inter alia*, "to abide by all the requirements and policies stated within that handbook, as a condition of my continued employment with Townley.... I

recognize that failure on my part to keep this agreement may result in my dismissal from the company." Excerpt of Record, tab 49.

Townley did not institute devotional services at its Eloy plant until April 1984. Pelvas attended the services without complaint only until June 1984, when he asked to be excused from the services because he was an atheist. His supervisor told him that attendance was mandatory. The supervisor also stated that Pelvas could sleep or read the newspaper during the services. Pelvas continued to attend the services, but in October 1984 he filed a religious discrimination charge with the Equal Employment Opportunity Commission. In December 1984, Pelvas left the company. Pelvas states that he was constructively discharged; Townley says that Pelvas refused to accept an offer of transfer to another plant.

In July 1986, the EEOC filed this action against Townley. The EEOC charged that Townley violated section 703(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), (1) by requiring its employees to attend devotional services, (2) by failing to accommodate Pelvas' objection to attending the services, and (3) by constructively discharging Pelvas. In May 1987, the district court granted the EEOC's motion for summary judgment on the first two issues, and issued a permanent injunction prohibiting Townley from continuing the mandatory devotional services at its Eloy plant. The court denied summary judgment on the constructive discharge issue. *EEOC v. Townley Eng'g & Mfg. Co.*, 675 F.Supp. 566 (D.Ariz.1987). Townley appealed the grant of summary judgment to this court.[1]

## II.

## JURISDICTION

The district court had jurisdiction under 42 U.S.C. § 2000e-5(f)(1) and 28 U.S.C. §§ 1331 and 1343. Since the order appealed is an interlocutory order granting an

---

1. The parties went to trial on the constructive discharge issue, and in April 1988 the court

found for Townley. That issue is not before us.

injunction, our jurisdiction rests upon 28 U.S.C. § 1292(a)(1).

## III.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo.* We affirm if the record, read in the light most favorable to the nonmoving party, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *International Ass'n of Machinists v. Aloha Airlines, Inc.,* 790 F.2d 727, 730 (9th Cir.), *cert. denied,* 479 U.S. 931, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986).

## IV.

## THE REACH OF TITLE VII

Townley argues both that Title VII was not intended to apply to this employment policy, and that the proposed application of Title VII would violate the Free Exercise Clause of the First Amendment. It is clear that applying Title VII to the devotional services "would give rise to serious constitutional questions." *See NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 501, 99 S.Ct. 1313, 1319, 59 L.Ed.2d 533 (1979). Therefore, we may not find it applicable unless there is an "affirmative intention of Congress clearly expressed" that it should be so applied. *Id.; see EEOC v. Fremont Christian School,* 781 F.2d 1362, 1365 (9th

Cir.1986); *EEOC v. Pacific Press Publishing Ass'n,* 676 F.2d 1272, 1276 (9th Cir. 1982).

We hold that Congress did clearly intend for Title VII to cover Townley's mandatory devotional services. Sections 701(j) and 703(a) of Title VII make clear that requiring employees over their objections to attend devotional services cannot be reconciled with Title VII's prohibition against religious discrimination. Furthermore, we hold that Congress did not intend section 702's exemption for religious corporations to shield corporations such as Townley.[2] We do hold, however, that Jake and Helen Townley have certain rights under the Free Exercise Clause that Title VII cannot infringe.

### A. Sections 701(j) and 703 of Title VII

#### 1. Discrimination on the Basis of Religion in General

As originally enacted, Title VII of the Civil Rights Act of 1964 simply prohibited employment discrimination on the basis of religion.[3] This prohibition clearly covered discrimination on the basis of religious *belief;* whether it protected employees' religious *practices* was less clear. To clarify the point, Congress amended Title VII in 1972 by adding a definition of religion.[4] The definition, contained in section 701(j), states:

---

2. We note that under the facts of this case, no construction of section 702 would avoid significant First Amendment questions. If we held that Townley was a "religious corporation" under the meaning of section 702, and therefore exempt from Title VII's prohibition against religious discrimination, then we might be faced with a question the Supreme Court left open in *Corporation of the Presiding Bishop v. Amos,* — U.S. ——, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987): whether exemption of a religious corporation's for-profit activities violates the Establishment Clause. *See id.* at 2875 (O'Connor, J., concurring in the judgment).

3. Section 703(a) of Title VII states in part that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a).

4. The amendment was in direct response to the decision in *Dewey v. Reynolds Metals Co.,* 429 F.2d 324 (6th Cir.1970), *aff'd by an equally divided court,* 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971). The plaintiff in *Dewey* argued that his employer had a duty under Title VII to accommodate his religious practice of not working on Sundays. The Sixth Circuit rejected this argument. It noted that Title VII's language prohibits discrimination, and said that the employee was not treated differently because of his religion. This holding had the potential to exclude all religious practices from coverage by Title VII, since "[t]he accommodation issue by definition arises only when a neutral rule of general applicability conflicts with the religious practices of a particular employee." *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 87, 97 S.Ct. 2264, 2278, 53 L.Ed.2d 113 (1977) (Marshall, J., dissenting).

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j). "The intent and effect of this definition was to make it an unlawful employment practice under § 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977). Accommodation by the employer to the employee's religious practices was made a statutory obligation.

### 2. *Order of Proof*

■ We have read sections 703(a) and 701(j) as creating a two-part framework in religious practice cases. First, the plaintiff must establish a prima facie case of religious discrimination. We have elaborated on the requirements of the plaintiff's burden in other opinions. We need not review the requirements in detail here, because Townley does not contest that the EEOC has met them.[5] Suffice it to say that after the plaintiff has made out a prima facie case, the burden shifts to the employer "to prove that [it] made good faith efforts to accommodate [the employee's] religious be-

liefs and, if those efforts were unsuccessful, to demonstrate that [it was] unable reasonably to accommodate his beliefs without undue hardship." *Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir.1978).

### 3. *Accommodation*

Townley admits that it has made no effort to accommodate Pelvas' objections to the services. It argues that Title VII does not require accommodation because (1) any attempt at accommodation would have caused it "undue hardship," and (2) Pelvas "waived the accommodation requirement when he voluntarily consented to attending the devotional services at the time he executed the signature page of the Employee Handbook agreeing to comply with all the policies of Townley," Appellant's Reply Brief at 8–9.[6]

■ The language from *Anderson* quoted above might be read to imply that an employer cannot bring up "undue hardship" unless it first proves that it made good faith efforts to accommodate the employee's practice. *See also American Postal Workers Union v. Postmaster General*, 781 F.2d 772, 776 (9th Cir.1986) ("it is incumbent upon the employer to undertake some initial steps to reach a reasonable accommodation of the particular religious belief at issue"); *Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403, 405–06 (9th Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). However, it is

---

**5.** We have stated that plaintiffs must meet a three-part test to establish a prima facie case of religious discrimination under sections 703(a) and 701(j). *See Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir.1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). The employee must show that (1) a bona fide religious belief of the employee conflicted with an employment policy; (2) the employee informed the employer of the conflict; and (3) the employee was penalized in some way because of the conflict. We note that although we have occasionally used language implying that the employer must *discharge* the employee because of the conflict, *see Anderson*, 589 F.2d at 401, we have never in fact required that the employee's penalty for observing his or her faith be so drastic. The *threat* of discharge (or of other adverse employment

practices) is a sufficient penalty. *See Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403, 405 (9th Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). An employee does not cease to be discriminated against because he temporarily gives up his religious practice and submits to the employment policy. *See American Postal Workers Union v. Postmaster General*, 781 F.2d 772, 774–75 (9th Cir.1986).

On appeal, Townley does not argue that atheistic beliefs are not protected against religious discrimination. *See Young v. Southwestern Sav. and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975).

**6.** Townley also argues that section 702 of Title VII exempts it completely from Title VII's religious accommodation requirement. *See* Part IV.B., *infra*.

doubtful that this language should be read so broadly. If an employer can show that no accommodation was possible without undue hardship, it makes no sense to require that he engage in a futile act. *See Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986) ("the extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship").[7] The language in our cases merely emphasizes that the burden of attempting an accommodation rests with the employer rather than the employee. When an employer does not propose an accommodation, or when its proposed accommodation does not eliminate the employee's religious conflict, the employer must accept the employee's proposal or demonstrate that the proposal would cause the employer undue hardship. *See American Postal Workers Union v. Postmaster General,* 781 F.2d 772, 776 (9th Cir.1986); *Burns,* 589 F.2d at 406.

■ Pelvas proposed that Townley accommodate his religious objections to the devotional services by excusing him from attendance. The district court found that this accommodation would have caused Townley no undue hardship. It stated, "Excusing Pelvas from the mandatory devotional services would have cost Townley nothing in the operation of its business activities, and would not have disrupted other workers." 675 F.Supp. at 568. We agree.

Townley argues that the district court should have considered the spiritual hardship the accommodation would have caused. We acknowledge that spiritual costs can exist. Congress has so recognized by its enactment of sections 702 and 701(e).[8] Townley is, of course, right when it says, "Cost cannot always be measured in terms of dollars. Spiritual 'costs' must also be given consideration...." Appellant's Brief at 27. It is very doubtful, however, that such "costs" can impose on a corporate employer the required level of hardship.

The difficulty is that under the statute the employer must show that the accommodation of a religious practice would cause "undue hardship *on the conduct of the employer's business.*" 42 U.S.C. § 2000e(j) (emphasis added). To assert that excusing Pelvas from the services would have inflicted spiritual costs on the company, or on Jake and Helen Townley is not enough. *Cf. Burns,* 589 F.2d at 407 (proof of coworkers' "unhappiness with a particular accommodation" is not enough to show undue hardship). Townley, the corporate entity, must connect the asserted spiritual hardship to an adverse impact on the conduct of the business. "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of 'actual imposition on coworkers or disruption of the work routine.'" *Tooley v. Martin–Marietta Corp.,* 648 F.2d 1239, 1243 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) (quoting *Burns,* 589 F.2d at 406–07); *see also*

---

**7.** We have often allowed an employer who has made no attempt at accommodation to argue as justification "undue hardship." *See, e.g., Tooley v. Martin–Marietta Corp.,* 648 F.2d 1239 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *Burns v. Southern Pacific Transp. Co.,* 589 F.2d 403 (9th Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Anderson v. General Dynamics Convair Div.,* 589 F.2d 397 (9th Cir.1978), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). *Proctor v. Consolidated Freightways Corp.,* 795 F.2d 1472 (9th Cir.1986), is not to the contrary. In that case, the employer had made efforts to accommodate and the issue was whether the efforts were made in good faith. *Id.* at 1477. We remanded to the district court

for further findings on that issue, and therefore did not reach the employer's "undue hardship" argument. *See id.* at 1475 n. 1. In this case, Townley's good faith is not in question. Townley sincerely believes no accommodation is possible without undue hardship. Obviously, an employer does not act in bad faith when it does not attempt an accommodation it sincerely believes would cause it undue hardship.

**8.** In addition, section 703(e)(1) allows employers to hire employees on the basis of their religion if it is a "bona fide occupational qualification"; section 703(e)(2) allows religious educational institutions to discriminate on the basis of religion.

*Hardison,* 432 U.S. at 81, 97 S.Ct. at 2275 (Title VII does not require rights of co-workers to be infringed in order to accommodate employee's religious practice); 3 Larson, *Employment Discrimination* § 92.12, at 19–35 to –47 (1987) (arguing that the most important factor in *Hardison* was impact on coworkers, not impact on employer). The statute, in brief, posits a gain-seeking employer exclusively concerned with preserving and promoting its economic efficiency. This is a legitimate supposition with respect to corporate employers.

It follows that Townley's attempts to link the alleged spiritual hardship to the conduct of the business must fail. It is not enough to argue that Townley was founded to "share with all of its employees the spiritual aspects of the company," Appellant's Brief at 27, and that the proposed accommodation would have a "chilling effect" on that purpose. To "chill" its purpose is irrelevant if it has no effect on its economic well-being.

It is true, of course, that Title VII does not ignore entirely the spiritual objectives of employers. Section 702 of Title VII expressly excludes religious corporations, associations, educational institutions, and societies from Title VII's prohibition against religious discrimination. 42 U.S.C. § 2000e–1. It is likely that Congress intended section 702 to be the sole recourse of corporations professing to be religious.[9]

However, even if this is not so, any effort in this case by Townley to show that its religious nature makes any accommodation of the religious belief of Pelvas an "undue hardship" under section 701(j) must fail. At most, Townley has stated that the ease with which it spreads its word to its employees would be slightly reduced were it to accommodate Pelvas. But "[u]ndue hardship means something greater than hardship." *Anderson,* 589 F.2d at 402. Pelvas was allowed to listen to the radio and read at the services, and the Eloy plant operated for eleven years without requir-ing its employees to attend services. This hardly provides an adequate foundation for asserting that excusing Pelvas would have imposed undue spiritual hardship on Townley's business.

Nor does the fact that the services also contain "business discussions" alter this conclusion. Townley argues that these business discussions cannot be separated from the rest of the service. Its only support for this assertion is Jake and Helen Townley's statement that they cannot separate God from their business. It does not argue that the attempt to separate the secular aspects of the service from the religious would cause hardship to coworkers or disrupt the work routine. Stripped to its core, then, this argument is the one considered and rejected above—that the accommodation would cause spiritual hardship to Townley. Even if undue hardship to Townley's business could be supplied by establishing a high degree of "spiritual hardship," a rather doubtful proposition, Townley has failed to establish that level of hardship.

■ Townley also argues that it did not have to accommodate Pelvas' objections to the services because Pelvas waived his rights to accommodation by signing a page of the Employee Handbook which committed him to complying with Townley's policies. The Supreme Court has stated that "there can be no prospective waiver of an employee's rights under Title VII." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974); *see also Spirides v. Reinhardt,* 613 F.2d 826, 832 (D.C.Cir.1979); *McClure v. Salvation Army,* 460 F.2d 553, 557 (5th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972); *cf. J.I. Case Co. v. NLRB,* 321 U.S. 332, 337, 64 S.Ct. 576, 580, 88 L.Ed. 762 (1944). There are exceptions to this general rule, *see, e.g., Alexander,* 415 U.S. at 52, 94 S.Ct. at 1022 (voluntary settlements); *Bauman v. United States District Court,* 557 F.2d 650, 658 n. 9 (9th Cir.1977) (plaintiff ineligible for class

---

**9.** Unless, of course, the corporations are able to invoke successfully section 703(e)(1) or (2). *See* note 8, *supra.*

action), but we decline to add another. Allowing the waiver of Title VII rights through covenants in employment contracts would undermine Title VII's policy of eradicating discrimination in employment.

### B. The "Religious Corporation" Exemption of Section 702

Townley next argues that it is a "religious corporation" exempt from Title VII by the terms of section 702, which states in part:

> This subchapter shall not apply ... to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e–1. The district court rejected this argument, as do we.

A brief review of the relevant legislative history is necessary. In 1963, the House Judiciary Committee drafted H.R. 7152, the bill which was the basis of much of the Civil Rights Act of 1964. Title VII of the bill included a section that stated the title would not apply to a "religious corporation, association, or society." The committee report accompanying the bill did not elaborate on the section. However, the section was the subject of some debate in the House after Representative Purcell proposed amending H.R. 7152 to allow an educational institution to discriminate on the

basis of religion if the institution was wholly or partly supported or managed "by a particular religion or by a particular religious corporation, association, or society," or if the institution's curriculum was "directed toward the propagation of a particular religion." *EEOC Legislative History of Titles VII and XI of the Civil Rights Act of 1964*, at 3197 (1968).

The debate on this proposal is relevant because an issue in the debate was whether such institutions were already protected by the "religious corporation" exemption. The consensus was that they were not protected if they were merely "affiliated" with a religious organization. For example, Representative Celler, the chairman of the Judiciary Committee and one of the drafters of the bill, was asked whether a church-supported orphanage would already be covered by the bill. He said, "If it is a *wholly church supported organization*, that is, a religious corporation that comes under [then] section 703." *Id.* at 3204 (emphasis added).[10] This coverage was considered too narrow, and the House passed the proposed amendment.[11]

Although this debate is far from comprehensive, it is the only useful legislative history we have on this section. Section 702 was amended by the Senate in 1964, and amended again by Congress in 1972, but the debate on the amendments sheds no more light on the definition of religious corporations.[12] The debate over Representative Purcell's amendment does indicate,

---

**10.** *See also id.* at 3201 (remarks of Rep. Roosevelt, stating that a church-supported orphanage would "unquestionably" be exempt under section 702 if it were "wholly owned" by the religious order).

**11.** The amendment was eventually passed as section 703(e)(2) of the Civil Rights Act, and codified at 42 U.S.C. § 2000e–2(e)(2), where it remains.

**12.** In the Senate, Senators Dirksen, Mansfield, Humphrey, and Kuchel drafted a substitute bill for the House bill. The substitute bill changed section 702 in two ways, both of which were adopted in the final draft of the Civil Rights Act. In the words of Senator Humphrey, who presented the bill to the Senate, the section was amended to limit the general exemption of religious groups to those practices relating

to the employment of individuals of a particular religion to perform work connected with the employer's religious activities, and to extend the exemption to private educational institutions with respect to the employment of individuals to perform work connected with the educational activities of such institutions. *Legislative History, supra,* at 3004.

The Equal Opportunity Act of 1972 changed section 702 to its present form. First, it deleted the clause exempting all educational institutions, and included educational institutions among the religious organizations listed in the section. Second, it amended the section to allow the organizations to discriminate on the basis of religion with respect to all their activities, not just their religious ones.

however, that Congress's conception of the scope of section 702 was not a broad one. All assumed that only those institutions with extremely close ties to organized religions would be covered. Churches, and entities similar to churches, were the paradigm.

As the district court noted, the case law on this question is not very helpful. In most cases, the defendant is clearly a "religious corporation, association, educational institution, or society" within the meaning of section 702 of the statute. *See, e.g., EEOC v. Fremont Christian School,* 781 F.2d 1362, 1364 (9th Cir.1986) (defendant was "private educational institution ... wholly owned and operated by the Assembly of God church"); *EEOC v. Pacific Press Publishing Ass'n,* 676 F.2d 1272, 1274 (9th Cir.1982) (defendant was "nonprofit corporation ... affiliated with the Seventh–Day Adventist Church" engaged in publishing "religiously oriented material"); *Rayburn v. General Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1164–65 (4th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986) (defendant was church); *EEOC v. Mississippi College,* 626 F.2d 477, 478 (5th Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981) (defendant was college owned and operated by convention of Southern Baptist churches). These cases, like the legislative history, demonstrate that the central function of section 702 has been to exempt churches, synagogues, and the like, and organizations closely affiliated with those entities.[13]

At least one case has tested the limits of this exemption. In *Fike v. United Methodist Children's Home,* 547 F.Supp. 286 (E.D. Va.1982), *aff'd,* 709 F.2d 284 (4th Cir.1983), the plaintiff alleged that the Children's Home dismissed him from his position as director because it wanted a Methodist minister in the position. The court found that the Children's Home "was founded by and

over the years has had close ties with the Methodist Church." *Id.* at 288. The Methodist Church became worried that the Home was becoming too secular, and as a result recommended that the Home hire a Methodist minister as director "in order to bring the Home back to the Church structure." *Id.* at 289. Despite these facts, the court refused to find that the Home was a "religious corporation" within the meaning of section 702. After examining the purported religious and secular characteristics of the Home at length, *id.* at 289–90, the court stated:

> While the original mission of the United Methodist Children's Home may have been to provide a Christian home for orphans and other children, that mission has not remained unchanged. The facts show that as far as the direction given the day-to-day life for the children is concerned, it is practically devoid of religious content or training, as such. While the purpose of caring for and providing guidance for troubled youths is no doubt an admirable and charitable one, it is not necessarily a religious one. For an organization to be considered "religious" requires something more than a board of trustees who are members of a church. The Court, therefore, holds that for the purposes of the exemption in § 2000e–1 the United Methodist Children's Home is, quite literally, Methodist only in name. It is a secular organization.

*Id.* at 290.

▮ Like the *Fike* court, we shall not attempt to outline section 702's precise scope. The effort to do so would fail. Rather, each case must turn on its own facts. All significant religious and secular characteristics must be weighed to determine whether the corporation's purpose and character are primarily religious. Only when that is the case will the corporation be able to avail itself of the exemption.[14]

---

**13.** Of course, even without section 702, the First Amendment would limit Title VII's ability to regulate the employment relationships within churches and similar organizations. *See Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 107, 73 S.Ct. 143, 150, 97 L.Ed. 120 (1952); *McClure*

*v. Salvation Army,* 460 F.2d 553, 558–61 (5th Cir.1972).

**14.** We have previously taken a somewhat similar approach in an area of the law that raises similar issues. In *St. Elizabeth Community*

■ Townley and the EEOC do not dispute the "primarily religious" standard. They differ over whether Townley is primarily religious or secular. On the secular side, the company is for profit. It produces mining equipment, an admittedly secular product. It is not affiliated with or supported by a church. Its articles of incorporation do not mention any religious purpose. Against these elements are the facts that Townley encloses Gospel tracts in its outgoing mail, prints Bible verses on its commercial documents (such as invoices and purchase orders), financially supports churches, missionaries, a prison ministry, and Christian radio broadcasts, and, of course, conducts a weekly devotional service. Underlying these facts, of course, is "the discipleship Jake and Helen Townley have for the Lord Jesus Christ."

When viewed together, we have no difficulty in holding that these characteristics indicate that Townley is primarily secular. We do not question the sincerity of the religious beliefs of the owners of Townley. Nor do we question that they regard the conduct of their company as subject to a

compact with God. We merely hold that the beliefs of the owners and operators of a corporation are simply not enough in themselves to make the corporation "religious" within the meaning of section 702. We therefore agree with the district court that Townley is not exempt under section 702 from Title VII's prohibition against religious discrimination.

## V.

### FREE EXERCISE CLAUSE

We now address Townley's contention that this application of Title VII violates its rights under the Free Exercise Clause of the First Amendment.

■ Townley urges this court to hold that it is entitled to invoke the Free Exercise Clause on its own behalf. Because Townley is merely the instrument through and by which Mr. and Mrs. Townley express their religious beliefs, it is unnecessary to address the abstract issue whether a for profit corporation has rights under the Free Exercise Clause independent of

*Hosp. v. NLRB,* 708 F.2d 1436 (9th Cir.1983), the NLRB sought to require the Hospital to enter into collective bargaining with a union representing its service and maintenance employees. The Hospital challenged the NLRB's jurisdiction over it, arguing that "since it is owned and operated by a religious order of the Catholic Church, Board jurisdiction would produce excessive entanglement between government and religion in violation of the First Amendment's free exercise and establishment clauses." *Id.* at 1438. To determine whether NLRB jurisdiction over the Hospital would violate the Establishment Clause, we applied the three-part analysis set out in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Most of our discussion was devoted to the third element of the test: whether the statute fosters excessive government entanglement with religion. Relying on *Lemon,* we said that examination of this element requires consideration of "the character and purpose of the institution affected, the nature of the activity the government mandates, and the resulting relationship between government and the religious organization." 708 F.2d at 1441 (citing *Lemon,* 403 U.S. at 615, 91 S.Ct. at 2112). In examining "the character and purpose of the institution affected," we looked closely at the Hospital's "institutional characteristics," and determined that its "primary purpose" and "principal function," *id.,* were not religious, and that its character was "pervasively

secular." *Id.* at 1442. We went on to hold that the NLRB's jurisdiction would not violate the Establishment Clause.

Although we adopt a similar approach in this case, we do not mean to imply that the analysis in a section 702 case is the same as in an Establishment Clause case. Our inquiry here is to determine whether the "general picture" of the institution is primarily religious or secular. *Cf. Roemer v. Board of Public Works,* 426 U.S. 736, 758, 96 S.Ct. 2337, 2350, 49 L.Ed.2d 179 (1976). In Establishment Clause cases, the "general picture" is only one element for the court to consider in determining whether the government activity in question "fosters excessive government entanglement with religion." *St. Elizabeth,* 708 F.2d at 1436. In making that determination, a court may have to conduct more particular inquiries into the institution's character than simply deciding whether it is primarily religious or secular. For example, an institution with a substantially, or even primarily, religious character may nevertheless have activities which can be regulated by the government without fear of excessive entanglement. *See, e.g., Tony & Susan Alamo Found. v. Secretary of Labor,* 471 U.S. 290, 305–06, 105 S.Ct. 1953, 1963, 85 L.Ed.2d 278 (1985); *EEOC v. Pacific Press Publishing Ass'n,* 676 F.2d 1272, 1282 (9th Cir.1982); *EEOC v. Southwestern Baptist Theological Seminary,* 651 F.2d 277, 286 (5th Cir.1981).

those of its shareholders and officers. Townley presents no rights of its own different from or greater than its owners' rights. *See* Appellant's Brief at 35 ("Townley Company is an extension of the beliefs of Mr. and Mrs. Townley, and for all purposes, the beliefs of Mr. and Mrs. Townley are the beliefs and tenets of the Townley Company."). Thus, the rights at issue are those of Jake and Helen Townley.[15]

To determine whether the application of Title VII to this employment policy violates Mr. and Mrs. Townley's Free Exercise rights, we must weigh three factors: "(1) the magnitude of the statute's impact on the exercise of a religious belief; (2) the existence of a compelling state interest justifying the burden imposed upon the exercise of the religious belief; and (3) the extent to which recognition of an exemption from the statute would impede objectives sought to be advanced by the statute." *EEOC v. Fremont Christian School*, 781 F.2d 1362, 1367 (9th Cir.1986); *see United States v. Lee*, 455 U.S. 252, 257–58, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982) ("The state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest.").

The Townleys state that the Bible and their covenant with God require them to share the Gospel with all of their employees. The EEOC does not dispute the sincerity of this belief, and in any event "[c]ourts are not arbiters of scriptural interpretation." *Thomas v. Review Bd.*, 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed. 2d 624 (1981). We therefore accept that ending mandatory attendance at the devotional services would have an impact on the Townley's religious practice. But we do not believe that the impact would be unreasonable and extreme. The EEOC does not seek to enjoin the services altogether; rather, it only objects to their mandatory nature. As the EEOC points out, the Townleys would still be able to share the Gospel with their employees.[16] Nevertheless, viewing the evidence in the light most favorable to the Townleys, it is clear that enjoining the services would make it more difficult for them to impart their religious message to their employees, and therefore to some extent would adversely affect their religious practices.

The strength of the government's interest in eradicating discrimination through Title VII is also clear. We have stated that "Congress' purpose to end discrimination is equally if not more compelling than other interests that have been held to justify legislation that burdened the exercise of religious convictions." *Pacific Press*, 676 F.2d at 1280. Protecting an employee's right to be free from forced observance of

---

**15.** Townley has standing to assert Jake and Helen Townley's Free Exercise rights. *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 303 n. 26, 105 S.Ct. 1953, 1963 n. 26, 85 L.Ed.2d 278 (1985).

It is clear, of course, that the Free Exercise Clause protects "religious organizations" as well as individuals. *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116, 73 S.Ct. 143, 154, 97 L.Ed. 120 (1952); *see Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 445–49, 89 S.Ct. 601, 604–06, 21 L.Ed.2d 658 (1969); Laycock, *Towards a General Theory of the Religion Clauses: The Case of Church Labor Relations and the Right to Church Autonomy*, 81 Colum.L. Rev. 1373, 1389 (1981) ("Religion includes important communal elements for most believers. They exercise their religion through religious organizations, and these organizations must be protected by the [Free Exercise] clause."). The Supreme Court has not discussed the scope of the term "religious organization," but it clearly includes organizations less pervasively religious

than churches. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 602–04, 103 S.Ct. 2017, 2034–35, 76 L.Ed.2d 157 (1983). We have often assumed without discussion that organizations with religious elements have Free Exercise rights. *See EEOC v. Fremont Christian School*, 781 F.2d 1362, 1367–69 (9th Cir.1986); *St. Elizabeth Community Hosp. v. NLRB*, 708 F.2d 1436, 1442–43 (9th Cir.1983); *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272, 1279–81 (9th Cir.1982). Again, we need not decide whether these cases support Townley's contention that it has Free Exercise rights.

**16.** We again note that (1) the mandatory services were not instituted at the Eloy plant for the first eleven years of its existence, and (2) Pelvas was allowed to read and listen to the radio at the services. We do not think these facts contradict the Townleys' assertion that excusing employees from the services would affect their religious practice, but they are evidence that the impact would not be great.

the religion of his employer is at the heart of Title VII's prohibition against religious discrimination.

Finally, we must consider whether the elimination of mandatory attendance at the devotional services constitutes an application of Title VII that is the "least restrictive means" of furthering the state's goal. We have said that this is "the critical aspect of the free exercise analysis." *Callahan v. Woods*, 736 F.2d 1269, 1272 (9th Cir.1984). *Callahan* teaches that we measure the importance of a

> regulation by ascertaining the marginal benefit of applying it to all individuals, rather than to all individuals except those holding a conflicting religious conviction. If the compelling state goal can be accomplished despite the exemption of a particular individual, then a regulation which denies an exemption is not the least restrictive means of furthering the state interest.

*Id.* at 1272–73 (citation omitted). Here, there is no doubt that to force the employee Pelvas to attend Townley's devotional services would seriously impede Title VII's goal.

The rights of the Townley's under the Free Exercise Clause do not alter this conclusion. We recognize that allowing a statute to limit a constitutional right alters the normal relationship between a statutory right and a constitutional one. Nevertheless, it is settled that the right to religious practice (unlike the right to religious belief) may be limited by a statute if "it is essential to accomplish an overriding governmental interest." *United States v. Lee*, 455 U.S. 252, 255, 102 S.Ct. 1051, 1054, 71 L.Ed.2d 127 (1982); *see Braunfeld v. Brown*, 366 U.S. 599, 603–04, 81 S.Ct. 1144, 1145–46, 6 L.Ed.2d 563 (1961); *Callahan v. Woods*, 736 F.2d 1269, 1272–73 (9th Cir. 1984); *Scott v. Rosenberg*, 702 F.2d 1263, 1273–74 (9th Cir.1983), *cert. denied*, 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984).

Any reluctance to apply this teaching is lessened by the nature of the conflict in this case. Both the Townleys and Pelvas seek to pursue a religious practice. Where the practices of employer and employee conflict, as in this case, it is not inappropriate to require the employer, who structures the workplace to a substantial degree, to travel the extra mile in adjusting its free exercise rights, if any, to accommodate the employee's Title VII rights.[17]

The transcendent principle in cases of this sort is accommodation. Where the religious practices of employers, such as the Townleys, and employees conflict, Title VII does not, and could not, require individual employers to abandon their religion. Rather, Title VII attempts to reach a mutual accommodation of the conflicting religious practices. This is consistent with the First Amendment's goal of ensuring religious freedom in a society with many different religions and religious groups.

▪ Therefore, we hold that, as applied in this case by the district court, Title VII's requirement of religious accommodation does not unduly burden the Townleys' free exercise rights save in one respect. The district court simply enjoined *all* mandatory services at Townley's Eloy plant. We believe the district court's decree was too broad. The goal of Title VII is served by protecting only those who have religious objections to the services. To protect those who do not have such objections is not necessary. Nor do we think that to require that the service be voluntary as to all employees, whether that is their wish or not, is necessary to further the purposes of Title VII. Following this decision, it is not likely that fear of intimidation will suppress requests to be excused on religious grounds. Obviously such requests must be honored by both Townley and the Townleys. Therefore, on remand the district court should frame the injunction accordingly.[18]

17. This does not mean that statutory rights generally are entitled to primacy over First Amendment rights. We only address the facts of this case.

18. When the district court entered its judgment in the constructive discharge case, it also found Townley in contempt of its original injunction and modified that injunction in several ways. We granted Townley's motion for emergency

Townley's request for attorney's fees is denied. Each party shall bear its own costs on appeal.

We affirm in part and reverse and remand in part.

NOONAN, Circuit Judge, dissenting:

In the performance of its mission in this case, the EEOC is asserting a position that, like the Townley Manufacturing Company's, must find its roots in the First Amendment. The right to believe necessarily implies the right not to believe. Conscience cannot be governmentally coerced. The Free Exercise Clause embraces the atheist with the orthodox. *Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). To exempt an activity from governmental regulation because of its religious nature is to accord a benefit to religion. *Corporation of Presiding Bishop v. Amos*, — U.S. ——, ——, 107 S.Ct. 2862 at 2874, 97 L.Ed.2d 273 (1987) (O'Connor, J., concurring). The EEOC could not exempt the Townley Manufacturing Company to the disadvantage of Pelvas if the effect of exemption were to coerce Pelvas to practice the company's religion or to give up his own.

No such showing of coercion has been made. According to Pelvas he was explicitly told that if he attended the prescribed meetings he could wear ear plugs and read a book or sleep. Wearing ear plugs, he was not exposed to hearing a word of doctrine subversive of his atheism. Reading a book or sleeping, he was not participating in any form of worship.

One can readily imagine gatherings of worshippers where merely entering the church or crossing the temple door in their company would be a symbolic act committing one to worship. Compulsion to attend such gatherings would be deeply offensive to the conscience. One can readily imagine schoolchildren summoned to an auditorium and subjected to religious propaganda. Compulsion of the children would be equally obnoxious to religious freedom. But the gatherings to which Pelvas has objected took place on company property during company time; and he was no child but a mature man. Presence at the gathering was not a religious act nor, as far as the record shows, a symbolic association with worship nor subjection to a religious message. Indeed what Pelvas was permitted to do was the antithesis of worship, the opposite of indoctrination. He was allowed to disassociate himself in the most public way from the devotional services that were conducted. He was allowed to turn off and shut out the inspirational message. If he had been discharged or penalized or even ostracized for such behavior he and the EEOC would have cause for complaint. But in fact there has been no showing that such acts as he was permitted to perform, contemptuous as they were of the services, have been or would have been the subject of discipline or disadvantage to Pelvas. The Townley Manufacturing Company has already accommodated Pelvas' conscientious unwillingness to participate in its services.

The court appears to gloss § 701(j) to mean that the employer must accept the employee's proposed accommodation unless the employee's proposal causes undue hardship. That is not the law: "By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation.... Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory

---

stay of the district court's modification of its order. We said that it was likely that the modification exceeded the court's jurisdiction over the matters appealed, which is limited to preserving the status quo. *See McClatchy Newspapers v. Central Valley Typographical Union*, 686 F.2d 731, 734 (9th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). We do not give the court detailed instructions on how to draft the injunction on remand. We recognize that Title VII gives the court discre-

tion to fashion appropriate equitable relief, 42 U.S.C. § 2000e–5(g), and we simply remind the court that Title VII's protections in this case extend only to those employees and prospective employees who have religious objections to attending the devotional services. We also note that as Title VII's protections are not limited to the employees of Townley's Eloy plant, the district court's injunction should not be so limited either.

inquiry is at an end." *Ansonia Bd. of Education v. Philbrook,* 479 U.S. 60, 68, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986); *see also Hudson v. Western Airlines,* 851 F.2d 261 (9th Cir.1988).

Accommodation has been accomplished but has not been acknowledged. Ignoring what Townley has allowed, the court declares, ironically or paradoxically, "The transcendent principle in cases of this sort is accommodation." Has accommodation ever been raised to such an eminence? Transcendent principles are those that rise above the here and now. Transcendent principles link human beings to shared goods of the spirit and their transtemporal destiny. Transcendent principles in the context of this case is the right of each person to worship God as his or her conscience determines.

That transcendent principle is at the center of the Religious Clauses embodied in the First Amendment to the Constitution. The First Amendment, guaranteeing the free exercise of religion to every person within the nation, is a guarantee that Townley Manufacturing Company rightly invokes. Nothing in the broad sweep of the amendment puts corporations outside its scope. Repeatedly and successfully, corporations have appealed to the protection the Religious Clauses afford or authorize. *Amos, supra* (1987); *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979); *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952). Just as a corporation enjoys the right of free speech guaranteed by the First Amendment, *Hague v. CIO,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), so a corporation enjoys the right guaranteed by the First Amendment to exercise religion.

The First Amendment does not say that only one kind of corporation enjoys this right. The First Amendment does not say that only religious corporations or only not-for-profit corporations are protected. The First Amendment does not authorize Congress to pick and choose the persons or the entities or the organizational forms that are free to exercise their religion. All persons—and under our Constitution all corporations are persons—are free. A statute cannot subtract from their freedom.

If it were otherwise, we would be back to the bad old days when state governments insisted that religious organizations incorporate in accordance with state law if they wanted to enjoy the benefits made available by the state. *E.g., Barnes v. First Parish of Falmouth,* 6 Mass. 401 (1810). *Barnes* attempted to force state incorporation upon Baptists who believed that incorporation was unChristian surrender to the state. *See* 2 McLaughlin, *New England Dissent 1630–1833* 1088 (1971). *Barnes* was possible only in a jurisdiction that frankly recognized a church established by the state. The *Barnes* court could insist on the form prescribed by the state because the court could celebrate "this religion, as understood by Protestants ... [which] was by the people established as a fundamental and essential part of their constitution." *Barnes, supra,* at 406. Such establishment, such forcing of a governmentally chosen form upon religious activity, is incompatible with the Religious Clauses.

True, Congress may create a bright line and exempt from regulation all of the nonprofit activity of religious corporations. *Amos, supra.* The reason is that regulation would chill religious organizations if they had to speculate which of their nonprofit activities a court would label religious. *Id.* at 2872–73 (Brennan, J., concurring). That a bright line may constitutionally be created does not mean that on a case-by-case basis other activities, asserted to be religious, may not be found to fall within the First Amendment's protection.

*Amos* did not pretend to decide whether the business activity of a religious corporation should be exempted, *see id.* at 2875 (O'Connor, J., concurring); and we do not face here the question unresolved in *Amos.* But we meet a parallel question: what exemption from governmental interference is required by the First Amendment as to the religious activity of a business corporation?

The First Amendment by its express terms is directed against *Congress* prohibiting the free exercise of religion. Remarkably and regrettably when Congress has found a national interest to be of sufficient importance to be incorporated into federal legislation and that legislation has conflicted with the free exercise of religion, the Supreme Court of the United States has uniformly found the national interest to outweigh the claims of conscience and permitted Congress to prohibit the free exercise of religion in conflict with the legislation. This bleak record is mitigated because the Court has sometimes reinterpreted a federal statute· to accommodate the Free Exercise claim. *E.g. United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965); *Girouard v. United States*, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946). But where the Free Exercise claim has been pressed and the federal statute not glossed, the result has not been good for Free Exercise. School boards, municipalities, states have been subjected to the standard set by the Religious Clauses. When Congress has legislated, the legislative objective has overborne the claims of conscience. The Amish have been forced to contribute to Social Security despite their contention ˙ that their religion prescribed other ways of caring for the community. *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). Conscientious objectors to war have been compelled to serve in the armed forces contrary to their most deeply held principles. *Negre v. Larsen*, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). The property of the Mormon church has been confiscated by congressional command in order to force conformity contrary to the religious principles of the afflicted church. *Late Corporation of the Church of Jesus Christ of Latter Day Saints v. United States*, 136 U.S. 1, 10 S.Ct. 792, 34 L.Ed. 478 (1890). In all, in nineteen cases the court has upheld congressional legislation in the face of the Free Exercise Clause. The courts of appeal have followed suit. *See* Appendix to this dissent.

Secular men and women take secular values seriously. Men and women of the world believe that the world's business is important. When Congress elevates this business to a national priority it has been all too easy for officers of the government and even judges to ignore the countervailing command of the Constitution. In the Supreme Court the Constitution has been no shield for the spirit when Congress has ordained that the spirit must yield to secular needs.

Despite these lessons of history it remains possible to say that the Religious Clauses are unimpaired in what they require of civilized government. The weighing of the claims of Congress is not to be carried out with a tilt in favor of Congress. The result should not be foreordained by Congress choosing a secular value as overriding. The Free Exercise Clause requires solicitude for the religious values that are invaded.

Insensitive to its entry on sacred ground, the EEOC in this case has proceeded as though it had but to invoke the congressional mandate and all opposition should cease. The EEOC has had success in eliminating racial bigotry. It has proceeded in this case as though the defendant was simply one more racist bigot. The agency has suffered from the scotopia of a bureaucracy. The agency must indeed vindicate the claims of conscience subjected to religious discrimination. The agency ˈmust do so with the utmost respect for the religious claims upon which its action intrudes.

Respect for the religious beliefs of others is particularly difficult when one does not share these beliefs. Judges are no more immune than congressmen from prejudices that are not only officious and overt but subtle and latent and incline one to take less than seriously notions of religious belief that depart markedly from one's own or some assumed norm. The First Amendment is an effort, not entirely forlorn, to interpose a bulwark between the prejudices of any official, legislator or judge and the stirrings of the spirit.

The agency and the court appear to assume that there must be a sharp division between secular activity and religious activity. Such a sharp division finds nourish-

ment in one of our cases. *St. Elizabeth Community Hosp. v. NLRB*, 708 F.2d 1436, 1441 (9th Cir.1983). But of course such a dichotomy is a species of theology. The theological position is that human beings should worship God on Sundays or some other chosen day and go about their business without reference to God the rest of the time. Such a split is attractive to some religious persons. It is repudiated by many, especially those who seek to integrate their lives and to integrate their activities. Among those who repudiate this theology is the Townley Manufacturing Company.

The undisputed facts are that Jake and Helen Townley made an agreement with God that their company would be "a faith-operated business whose primary purpose would be to share the Gospel of the Lord Jesus Christ and to remain completely dedicated to God's service." The integration of work and religious purpose that the Townleys and their company seek was captured centuries ago in exquisite devotional verse:

Who sweeps a room as for Thy cause
Makes that, and the action, fine.
George Herbert, "The Elixir," *The Writings of George Herbert*, 185.

As part of the Townleys' covenant with God they agreed "to acknowledge God's blessing upon the business and his continued direction of the business and his use of the business." The fundamental purpose of their company is "to stand as a testimony to God's blessing to all persons who will operate their business according to Christian principles." In furtherance of that purpose the company conducts the services of which Pelvas complains.

For an agency of the government, or Congress, or a court to say that the Townleys are mistaken in their beliefs or that the Townley Manufacturing Company cannot have the purpose ascribed to it and shall not carry out the program of devotion it has set up is to make a theological judgment—a theological judgment fairly characterized as reflecting either a secularism skeptical of God's existence and power or a species of deism that radically isolates God from the world that believers believe God created and animates and directs. The First Amendment prohibits an agency of government, or Congress, or even a court, from imposing such a theological judgment to curb the free exercise of religion.

## APPENDIX
### The Federal Appellate Courts and the Free Exercise Clause
#### SUPREME COURT CASES*

A. Decisions of the Supreme Court of the United States Sustaining Congressional Legislation Against A Claim That The Legislation Violated The Free Exercise Clause.

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| Lyng v. Northwest Indian Cemetery Protective Assn. | 108 S.Ct. 1319 (1988) 99 L.Ed.2d 534 | federal forest service plans | no |
| Bowen v. Roy | 476 U.S. 693 (1986) 106 S.Ct. 2147 90 L.Ed.2d 735 | federal welfare requirements | no |
| Goldman v. Weinberger | 475 U.S. 503 (1986) 106 S.Ct. 1310 89 L.Ed.2d 478 | federal military regulations | no |
| Alamo v. Secretary of Labor | 471 U.S. 290 (1985) 105 S.Ct. 1953 85 L.Ed.2d 278 | federal labor statute | no |
| Wayte v. United States | 470 U.S. 598 (1985) 105 S.Ct. 1524 84 L.Ed.2d 547 | federal conscription provision | no |
| Bob Jones University v. United States | 461 U.S. 574 (1983) 103 S.Ct. 2017 76 L.Ed.2d 157 | federal tax provision | no |
| United States v. Lee | 455 U.S. 252 (1982) 102 S.Ct. 1051 71 L.Ed.2d 127 | federal tax provision | no |

* This appendix lists cases that were located by a LEXIS search (Genfed file: "free exercise" w/10 unconstit! and relig!) conducted in August, 1988 by my law clerk, Bernard J. Cassidy, and is adopted by me and made a part of my dissent. Additional cases that came to light after the LEXIS search have been included. The subsequent history of each case has been omitted, except to indicate if the case has been overruled.

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| Trans World Airlines, Inc. v. Hardison | 432 U.S. 63 (1977)<br>97 S.Ct. 2264<br>53 L.Ed.2d 113 | federal antidiscrimination statute | no |
| United States v. American Friends Service Committee | 419 U.S. 7 (1974)<br>95 S.Ct. 13<br>42 L.Ed.2d 7 | federal tax provision | no |
| Johnson v. Robison | 415 U.S. 361 (1974)<br>94 S.Ct. 1160<br>39 L.Ed.2d 389 | federal veterans' statute | no |
| Gillette v. United States | 401 U.S. 437 (1971)<br>91 S.Ct. 828<br>28 L.Ed.2d 168 | federal conscription provision | no |
| United States v. Seeger | 380 U.S. 163 (1965)<br>85 S.Ct. 850<br>13 L.Ed.2d 733 | federal conscription provision | no |
| Gara v. United States | 340 U.S. 857 (1950)<br>71 S.Ct. 87<br>95 L.Ed. 628 | federal conscription provision | no<br>(affirmed by an equally divided court) |
| United States v. Ballard | 322 U.S. 78 (1944)<br>64 S.Ct. 882<br>88 L.Ed. 1148 | federal mail fraud statutes | no<br>(as applied by district ct)<br>(reversed on other grounds, 329 U.S. 187)<br>67 S.Ct. 261<br>91 L.Ed. 181 (1946) |
| Selective Draft Law Cases | 245 U.S. 366 (1918) | federal conscription provision | no |
| United States ex rel Turner v. Williams | 194 U.S. 279 (1904)<br>24 S.Ct. 719<br>48 L.Ed. 979 | federal immigration statute | no |
| Mormon Church v. United States | 136 U.S. 1 (1890)<br>10 S.Ct. 792<br>34 L.Ed. 478 | federal disincorporation | no |
| Davis v. Beason | 133 U.S. 333 (1890)<br>10 S.Ct. 299<br>33 L.Ed. 637 | territorial polygamy statute (authored by Congress | no |
| Reynolds v. United States | 98 U.S. 145 (1878 term)<br>25 L.Ed. 244 | territorial polygamy statute (authored by Congress) | no |

**B. Decisions of the Supreme Court of the United States Sustaining State Action Against A Claim That The Action Violated The Free Exercise Clause**

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| Board of Education v. Allen | 392 U.S. 236 (1968)<br>88 S.Ct. 1923<br>20 L.Ed.2d 1060 | state educational statute | no |
| Poulos v. New Hampshire | 345 U.S. 395 (1953)<br>73 S.Ct. 760<br>97 L.Ed. 1105 | city licensing ordinance | no |
| Zorach v. Clauson | 343 U.S. 306 (1952)<br>72 S.Ct. 679<br>96 L.Ed. 954 | state educational statute | no |
| In re Summers | 325 U.S. 561 (1945)<br>65 S.Ct. 1307<br>89 L.Ed. 1795 | state bar provision | no |
| Prince v. Massachusetts | 321 U.S. 158 (1944)<br>64 S.Ct. 438<br>88 L.Ed. 645 | state employment statute | no |
| Minersville School District v. Gobitis | 310 U.S. 586 (1940)<br>60 S.Ct. 1010<br>84 L.Ed. 1375 | state educational provision | no<br>(overruled, 319 U.S. 624)<br>63 S.Ct. 1178<br>87 L.Ed. 1628 (1943) |
| Hamilton v. University of California | 293 U.S. 245 (1934)<br>55 S.Ct. 197<br>79 L.Ed. 343 | state educational regulation | no |

**C. Decisions of the Supreme Court of the United States Invalidating State Action As A Violation of the Free Exercise Clause**

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| Jensen v. Quaring | 472 U.S. 478 (1985)<br>105 S.Ct. 3492<br>86 L.Ed.2d 383 | state licensing regulation | yes<br>(affirmed by an equally divided court) |
| Thomas v. Review Board | 450 U.S. 707 (1981)<br>101 S.Ct. 1425<br>67 L.Ed.2d 624 | state unemployment statute | yes |
| McDaniel v. Paty | 435 U.S. 618 (1978)<br>98 S.Ct. 1322<br>55 L.Ed.2d 593 | state constitutional provision | yes |
| Serbian Orthodox Diocese v. Milivojevich | 426 U.S. 696 (1976)<br>96 S.Ct. 2372 | state judicial decree | yes |

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| Wisconsin v. Yoder | 49 L.Ed.2d 151<br>406 U.S. 205 (1972)<br>92 S.Ct. 1526 | state educational statute | yes |
| Sherbert v. Verner | 32 L.Ed.2d 15<br>374 U.S. 398 (1963)<br>83 S.Ct. 1790 | state unemployment statute | yes |
| Torcaso v. Watkins | 10 L.Ed.2d 965<br>367 U.S. 488 (1961)<br>81 S.Ct. 1680 | state constitutional provision | yes |
| Kedroff v. St. Nicholas Cathedral | 6 L.Ed.2d 982<br>344 U.S. 94 (1952)<br>73 S.Ct. 143 | state corporations statute | yes |
| Kunz v. New York | 97 L.Ed. 120<br>340 U.S. 290 (1951)<br>71 S.Ct. 312 | city public worship ordinance | yes<br>(speech grounds) |
| Marsh v. Alabama | 95 L.Ed. 280<br>326 U.S. 501 (1946)<br>66 S.Ct. 276 | state trespass statute | yes |
| Tucker v. Texas | 90 L.Ed. 265<br>326 U.S. 517 (1946)<br>66 S.Ct. 274 | state trespass statute | yes |
| Follett v. McCormick | 90 L.Ed. 274<br>321 U.S. 573 (1944)<br>64 S.Ct. 717 | city license ordinance | yes |
| West Virginia State Board of Education v. Barnette | 88 L.Ed. 938<br>319 U.S. 624 (1943)<br>63 S.Ct. 1178 | state educational regulation | yes |
| Murdock v. Pennsylvania | 87 L.Ed. 1628<br>319 U.S. 105 (1943)<br>63 S.Ct. 870 | state licensing ordinance | yes |
| Jones v. Opelika | 87 L.Ed. 1292<br>319 U.S. 103 (1943)<br>63 S.Ct. 890 | city licensing ordinance | yes |
| Cantwell v. Connecticut | 87 L.Ed. 1290<br>310 U.S. 296 (1940)<br>60 S.Ct. 900<br>84 L.Ed. 1213 | state solicitation statute | yes |

## U.S. COURT OF APPEALS

**D. Decisions of the United States Courts of Appeals Sustaining Congressional Legislation Against A Claim That the Legislation Violated The Free Exercise Clause**

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| United States v. Slabaugh | 848 F.2d 113 (8th Cir.1988) | federal marshal's regulation | no |
| Hernandez v. Commissioner of Internal Revenue | 819 F.2d 1212 (1st Cir. 1987) | federal tax provision | no |
| Nelson v. I.R.S. | 796 F.2d 164 (6th Cir.1986) | federal tax provision | no |
| United States v. Allen | 760 F.2d 447 (2d Cir.1985) | federal property statute | no |
| Volunteers of America v. N.L.R.B. | 752 F.2d 345 (8th Cir.1985) | federal agency order | no |
| United States v. Rush | 738 F.2d 497 (1st Cir.1984) | federal drug statute | no |
| Denver Post v. N.L.R.B. | 732 F.2d 769 (10th Cir. 1984) | federal agency order | no |
| St. Elizabeth Community Hospital v. N.L.R.B. | 708 F.2d 1436 (9th Cir. 1983) | federal labor statute | no |
| Wilson v. Block | 708 F.2d 735 (D.C.Cir.1983) | federal agency plans | no |
| United States v. Middleton | 690 F.2d 820 (11th Cir. 1982) | federal drug statute | no |
| Tressler Lutheran Home v. N.L.R.B. | 677 F.2d 302 (3d Cir.1982) | federal agency order | no |
| E.E.O.C. v. Pacific Press | 676 F.2d 1272 (9th Cir. 1982) | federal employment statute | no |
| N.L.R.B. v. St. Louis Christian Home | 663 F.2d 60 (8th Cir.1981) | federal agency order | no |
| E.E.O.C. v. Southwestern Baptist | 651 F.2d 277 (5th Cir.1981) | federal employment statute | no |
| E.E.O.C. v. Mississippi College | 626 F.2d 477 (5th Cir.1980) | federal employment statute | no |
| Sequoyah v. T.V.A. | 620 F.2d 1159 (6th Cir. 1980) | federal dam project | no |
| United States v. Holmes | 614 F.2d 985 (5th Cir.1980) | federal tax provision | no |
| Proffitt v. Ciccone | 506 F.2d 1020 (8th Cir. 1974) | federal prison regulations | no |
| United States v. Huss | 482 F.2d 38 (2d Cir.1973) | federal contempt decree | no |
| Christian Echoes v. United States | 470 F.2d 849 (10th Cir. 1972) | federal tax provision | no |

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| Smilow v. United States | 465 F.2d 802 (2d Cir.1972) | federal contempt decree | no (vacated on other grounds, 409 U.S. 944 93 S.Ct. 268 34 L.Ed.2d 215 (1972)) |
| McClure v. Salvation Army | 460 F.2d 553 (5th Cir.1972) | federal employment statute | no |
| United States v. Spears | 443 F.2d 895 (5th Cir.1971) | federal drug statute | no |
| United States v. Wilson | 440 F.2d 382 (8th Cir.1971) | federal conscription provision | no |
| United States v. Reeb | 433 F.2d 381 (9th Cir.1970) | federal conscription provision | no |
| Hearde v. Commissioner | 421 F.2d 846 (9th Cir.1970) | federal tax provision | no |
| O'Brien v. Blackwell | 421 F.2d 844 (5th Cir.1970) | federal prison regulations | no |
| Leary v. United States | 383 F.2d 851 (5th Cir.1967) | federal drug statute | no (reversed on other grounds, 395 U.S. 6 89 S.Ct. 1532 23 L.Ed.2d 57 (1969)) |
| Application of Georgetown | 331 F.2d 1000 (D.C.Cir. 1964) | federal judicial order | no |
| Otten v. Staten Island Rapid Transit | 229 F.2d 919 (2d Cir.1956) | federal labor regulation | no |
| Mitchell v. Pilgrim Holiness Church | 210 F.2d 879 (7th Cir.1954) | federal labor regulation | no |
| Cannon v. United States | 181 F.2d 354 (9th Cir.1950) | federal conscription provision | no |
| Roodenko v. United States | 147 F.2d 752 (10th Cir. 1945) | federal conscription provision | no |
| Hopper v. United States | 142 F.2d 181 (9th Cir.1944) | federal conscription provision | no |

**E. Decision of the United States Courts of Appeals Sustaining State Action Against A Claim The Action Violated The Free Exercise Clause**

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| Wilder v. Bernstein | 848 F.2d 1338 (2d Cir.1988) | state childcare scheme | no |
| Smith v. North Babylon Bd. of Education | 844 F.2d 90 (2d Cir.1988) | school board regulation | no |
| Allen v. Toombs | 827 F.2d 563 (9th Cir.1987) | state prison regulation | no |
| Mozert v. Hawkins | 827 F.2d 1058 (6th Cir. 1987) | school board regulation | no |
| Paul v. Watchtower | 819 F.2d 875 (9th Cir.1987) | state court decree | no |
| Martinelli v. Dugger | 817 F.2d 1499 (11th Cir. 1987) | state prison regulations | no |
| Fellowship Baptist Church v. Benton | 815 F.2d 485 (8th Cir.1987) | state educational statute | no |
| Phan v. Virginia | 806 F.2d 516 (4th Cir.1986) | state constitutional provision | no |
| Azeez v. Fairman | 795 F.2d 1296 (7th Cir. 1986) | state prison regulations | no |
| Capoeman v. Reed | 754 F.2d 1512 (9th Cir. 1985) | state prison regulations | no |
| Catholic High School Ass'n v. Culvert | 753 F.2d 1161 (2d Cir.1985) | state labor regulation | no |
| Dreibelbis v. Marks | 742 F.2d 792 (3d Cir.1984) | state prison regulations | no |
| Pinsker v. Joint District | 735 F.2d 388 (10th Cir. 1984) | school district regulation | no |
| Grosz v. Miami Beach | 721 F.2d 729 (11th Cir. 1983) | city zoning ordinance | no |
| Madyun v. Franzen | 704 F.2d 954 (7th Cir.1983) | state prison regulation | no |
| Lakewood Congregation v. Lakewood | 699 F.2d 303 (6th Cir.1983) | city zoning ordinance | no |
| Int'l Soc. for Krishna Consciousness v. City of Houston, Tex. | 689 F.2d 541 (5th Cir.1982) | city solicitation ordinance | no |
| Menora v. Illinois High School Ass'n | 683 F.2d 1030 (7th Cir. 1982) | state educational regulation | no |
| Rogers v. Scurr | 676 F.2d 1211 (8th Cir. 1982) | state prison regulations | no |
| Africa v. Pennsylvania | 662 F.2d 1025 (3th Cir. 1982) | state prison regulations | no |
| Imam Ali Abdullah Akbar v. Canney | 634 F.2d 339 (6th Cir.1980) | state prison regulations | no |
| Walsh v. Louisiana High Athletic Assn. | 616 F.2d 152 (5th Cir.1980) | state educational regulation | no |
| Int'l Soc. for Krishna Consciousness v. Eaves | 601 F.2d 809 (5th Cir.1979) | municipal solicitation ordinance | no |

| CASE | CITATION | CHALLENGED MATTER | VIOLATIVE OF FREE EXERCISE CLAUSE |
|---|---|---|---|
| Arsberry v. Sielaff | 586 F.2d 37 (7th Cir.1978) | state prison regulations | no |
| Kennedy v. Meacham | 540 F.2d 1057 (10th Cir. 1976) | state prison regulations | no |
| LaReau v. MacDougall | 473 F.2d 974 (2d Cir.1972) | state prison regulations | no |
| Brooks v. Wainwright | 428 F.2d 652 (5th Cir.1970) | state prison regulation | no (contra 405 U.S. 319 92 S.Ct. 1079 31 L.Ed.2d 263 (1972)) |
| Brown v. Wainwright | 419 F.2d 1376 (5th Cir. 1970) | state prison regulations | no (contra 405 U.S. 319 92 S.Ct. 1079 31 L.Ed.2d 263 (1972)) |
| Sharp v. Sigler | 408 F.2d 966 (8th Cir.1969) | state prison regulations | no |
| Evans v. Ciccone | 377 F.2d 4 (8th Cir.1967) | state prison regulation | no |
| Sostre v. McGinnis | 334 F.2d 906 (2d Cir.1964) | state prison regulations | no |

F. Decisions of the United States Courts of Appeals Invalidating State Action As a Violation of the Free Exercise Clause**

| | | | |
|---|---|---|---|
| Murphy v. Missouri Dep't of Corrections | 814 F.2d 1252 (8th Cir. 1987) | state prison regulation | yes |
| Barrett v. Com. of Va. | 689 F.2d 498 (4th Cir.1982) | state prison regulations | yes |
| Gallahan v. Hollyfield | 670 F.2d 1345 (4th Cir. 1982) | state prison regulation | yes |
| Burgin v. Henderson | 536 F.2d 501 (2d Cir.1976) | state prison regulation | yes |
| Teterud Burns | 522 F.2d 357 (8th Cir.1975) | state prison regulation | yes |
| Neal v. Georgia | 464 F.2d 446 (5th Cir.1972) | state prison regulation | yes |
| Walker v. Blackwell | 411 F.2d 23 (5th Cir.1968) | state prison regulations | yes (in part) and no (in part) |

** There is one case, Kahane v. Carlson, 527 F.2d 492 (2d Cir.1975), in which the Court of Appeals invalidated a federal prison regulation that would have prevented an incarcerated rabbi from keeping a kosher diet.